NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-643

COMMONWEALTH

vs.

HAMZA H. ABDO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant was convicted of driving under the influence of intoxicating liquor.[1] On appeal the defendant challenges the empanelment of two jurors who, he contends, showed bias in favor of the police.  The defendant further contends that his trial counsel was ineffective for failing to request an instruction on lost or destroyed exculpatory evidence.  We affirm.

---

[1] The judge also found the defendant responsible for the civil infractions of speeding and possessing an open container of alcohol in a motor vehicle.

1.  Juror selection.  During jury empanelment, defense counsel challenged juror no. 1[2] and juror no. 7 after the judge questioned each of them about whether they would believe the testimony of a police officer over that of a civilian.[3]  The judge declined to excuse either juror for cause, and both were empaneled.[4]  The defendant argues on appeal that this was an abuse of discretion.  We disagree.

After the judge posed questions to the venire, including whether they would "believe the testimony of a police officer over the testimony of a civilian witness just because that person is employed in law enforcement," the judge called juror no. 1 to sidebar.  In response to further questioning, juror no. 1 stated that he would "believe in a police officer over a civilian" because police "know . . . the laws and stuff."  When the judge explained that "the question is whether you think you

---

[2] The defendant identifies this juror as juror no. 3, but the Commonwealth represents that the juror actually took the first seat.  From our reading of the transcript, it appears that the Commonwealth is correct, so we will refer to the juror as juror no. 1.  This discrepancy is not, in any event, material to our analysis.

[3] The defendant challenged juror no. 7 for cause but raised only a general objection to juror no. 1.  As the Commonwealth treats the objection as a challenge for cause, we will do likewise and assume the challenge was preserved.

[4] The defendant later used his peremptory challenges on two other jurors.

can follow my instruction on assessing the police officer's credibility and testimony just like anybody else that testifies," juror no. 1 answered, "Right." The judge then asked directly, "Can you follow my instruction in deciding whether to believe the officer or not?" to which juror no. 1 answered, "Yeah." At this point the judge had juror no. 1 step back, and a discussion ensued between the judge and defense counsel. Although portions of that discussion are designated as inaudible, it appears that defense counsel raised an objection based on "some hesitation" in juror no. 1's answers. The judge overruled the objection, expressly stating that she "didn't find any hesitation after [her] final question."

With regard to juror no. 7, the judge called her to sidebar for additional questioning because she had written on her questionnaire, "I don't trust anyone." In the course of that questioning, juror no. 7 stated, "I guess I should have raised my hand when you said about the police officer." When the judge probed further by asking juror no. 7 whether she would "tend to believe a police officer," juror no. 7 answered, "Uh-huh." The judge then asked, "So even with the notion that you're coming in with a disposition to potentially believe police officers, nevertheless, can you still follow my instruction and assess a police officer's credibility on the witness stand just like you

3

would a civilian witness?" Juror no. 7 answered, "Sure," and said, "I don't," in response to the judge's follow-up question whether juror no. 7 had concerns about her ability to follow the instruction. The judge found juror no. 7 to be indifferent and denied defense counsel's challenge for cause.

In light of these exchanges, we are unpersuaded by the defendant's argument that the judge abused her discretion by empaneling the challenged jurors. "A trial judge has broad discretion in determining the partiality of a prospective juror." Commonwealth v. Jaime J., 56 Mass. App. Ct. 268, 271-272 (2002). "When a trial judge -- who is in a much better position than an appellate court to evaluate a prospective juror's ability to be impartial -- has examined a juror for possible bias and declared [that juror] indifferent, appellate courts defer to the judge's discretion 'unless juror prejudice is manifest.'" Id. at 272, quoting Commonwealth v. Seabrooks, 433 Mass. 439, 443 (2001). Thus, "[a] determination by the judge that a jury are impartial will not be overturned on appeal in the absence of a clear showing of abuse of discretion or that the finding was clearly erroneous." Commonwealth v. Chambers, 93 Mass. App. Ct. 806, 809 (2018), quoting Commonwealth v. Andrade, 468 Mass. 543, 548 (2014).

We discern no abuse of discretion or clear error here, as the judge could have fairly interpreted the jurors' statements as unequivocal expressions of impartiality. The judge appropriately asked the jurors whether they could "set aside their own opinions, properly weigh the evidence, and follow the judge's instructions." Chambers, 93 Mass. App. Ct. at 809. It was within the judge's discretion to view juror no. 1's answer, "Yeah," as unequivocal, especially where the judge found that he responded without any hesitation. Likewise, the judge could have fairly viewed juror no. 7's answer, "Sure," and her follow-up statement that she had no concerns with following the instruction to be unequivocal. The judge did not abuse her discretion in finding these jurors impartial. See Commonwealth v. Colton, 477 Mass. 1, 16-17 (2017) (not abuse of discretion to empanel juror who said "he had a 'hard time with [the] concept of' the 'defense of a lack of criminal responsibility'" but, when asked whether he could be fair, responded, "Yes, I think so"); Jaime J., 56 Mass. App. Ct. at 273-275 (not abuse of discretion to empanel jurors who, when asked whether they could be impartial, said, "I probably could do that," "I think I could," and "I imagine I could, yeah").

2. Ineffective assistance. At trial the arresting officer testified that the defendant was "mostly argumentative" during

5

the booking process and showed signs of intoxication.  The Commonwealth did not introduce a booking video into evidence.  The defendant argues that, as a result, he was entitled to an instruction on lost or destroyed exculpatory evidence and that his trial counsel was ineffective for failing to ask for such an instruction.  The defendant's argument finds no support on this record.

"[O]ur courts strongly disfavor raising claims of ineffective assistance on direct appeal."  Commonwealth v. Zinser, 446 Mass. 807, 811 (2006).  Although a "narrow" exception exists "when the factual basis of the claim appears indisputably on the trial record," id., quoting Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994), that is not the case here.  To prevail on his claim, the defendant would need to show that he "would have been entitled to a jury instruction" on lost or destroyed exculpatory evidence had counsel requested one.  Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006).  To meet that burden, the defendant would need to show in turn that there is "'a reasonable possibility, based on concrete evidence,' that the evidence was exculpatory."  Commonwealth v. Seino, 479 Mass. 463, 477 (2018), quoting Commonwealth v. Williams, 455 Mass. 706, 718 (2010).

The factual basis of the defendant's claim does not appear indisputably on this record. Most fundamentally, the record does not demonstrate that a booking video even exists. Although the arresting officer acknowledged on cross-examination that "[t]here are cameras" in the booking area, he testified that "[i]t's not audio recorded" and that he was not positive whether it was video recorded. Later, when the judge asked the prosecutor whether there was "any video in this case," the prosecutor replied, "Not to the best of my knowledge" and "We always request video from the departments." And defense counsel himself acknowledged that "it's unclear as to whether or not specifically in this case there was video."

Moreover, even assuming a booking video exists, the record does not demonstrate that it is exculpatory. Without any evidence of what the video would show, the defendant's assertion

that it would impeach the arresting officer's testimony is speculative. The defendant has therefore failed to establish ineffective assistance of counsel on this record. See Zinser, 446 Mass. at 810-811.

Judgment affirmed.

By the Court (Henry, Shin & Toone, JJ.[5]),

Paul Little

Clerk

Entered: May 14, 2026.

---

[5] The panelists are listed in order of seniority.

8